## FAIRMONT CREAMERY CO. et al. v. MARSHALL.

No. 29523. Sept. 24, 1940.

*105 P. 2d 778.*

Crouch, Rhodes & Crow, of Tulsa, and Bierer & Bierer, of Guthrie, for plaintiffs in error.

Maurice M. Thomas, of Oklahoma City, and A. V. Dinwiddie, of Guthrie, for defendant in error.

CORN, J. This is an appeal from a judgment rendered March 27, 1939, in the district court of Logan county, in favor of J. E. Marshall, plaintiff below, for personal injuries sustained in an automobile collision, against Fairmont Creamery Company and Roy Henness, defendants below. For convenience the parties will be referred to as they appeared in the trial court.

Plaintiff, on July 29, 1938, instituted an action in the district court of Logan county, alleging that he had sustained personal injuries in an automobile collision on August 8, 1936, as a result of the alleged negligence of the defendants. The defendants' answer consisted of a general denial and a plea of contributory negligence. The jury returned a verdict for plaintiff.

The defendants' first assignment of error is:

"The court erred in overruling and denying the defendants' motion for a new trial on the ground of newly discovered evidence."

Defendants state in their brief:

"The court will note the contention of the plaintiff that his back was bothering him and that he had a pain in his back, across the small of his back and kidneys ever since the accident, and that he did not have any difficulty with his back prior to the accident.

"The defendants were never advised of the plaintiff's condition, because the plaintiff refused to be examined by a doctor of the defendants' choice, and even at the trial the plaintiff's attorney objected to the question asked on cross-examination, whether or not the plaintiff would be willing to submit himself to an examination by some doctor.

"On cross-examination the plaintiff testified that he was seen by Dr. Lehew about five times after the accident. He further said that after November, 1936, he was treated by Dr. Gleason for a period of about a year and that he was treated by Dr. Shaver a good many times for his kidneys, and that Dr. Lehew treated him for his kidneys before then; he further testified, that he had not seen a doctor for about six or seven months prior to the accident, and that at that time he saw Dr. Lehew but that he did not remember what he had Dr. Lehew for.

"From the plaintiff's testimony on cross-examination it became obvious that the plaintiff must have been suffering from some serious ailment prior to the accident which he was reluctant to disclose. As a matter of pure chance, he was asked on cross-examination whether he had ever been operated upon and he replied that he was operated on twice 'for prostate gland trouble.' One of these operations was performed about four

months prior to the accident and the second operation was performed in April of 1938. He then revealed that both of the operations were performed by Dr. Henry Brown of Tulsa, Oklahoma, and contended that the second operation was necessitated by the injuries received by him in the accident. He stated that he recovered from the first operation, came along all right, did well after it and felt good, but the accident made the second operation necessary.

"This was the first information the defendants had that the plaintiff was operated upon and was being treated by Dr. Henry Brown of Tulsa, and this information was obtained through an accidental question. The trial of the case was had at Guthrie, and Dr. Brown, of course, lived in Tulsa. There was, therefore, no way of determining what Dr. Brown's testimony would be with reference to the plaintiff's condition at the time of the trial."

At the trial, plaintiff, as first witness, testified to all the facts concerning his two operations that were performed by Dr. Brown, yet defendants made no attempt whatsoever to continue or delay the case in order to get Dr. Brown's testimony. Defendants made no effort to comply with the rules announced by this court as essentially necessary if they would obtain a new trial on the grounds of newly discovered evidence. Defendants speculated on the jury's verdict being favorable to them on the question of liability, then, when the verdict was returned in favor of plaintiff, they obtained Dr. Brown's deposition to use in support of a motion for new trial on the grounds of newly discovered evidence.

In Ryker v. Dickey, 177 Okla. 91, 57 P. 2d 816, in the body of the opinion, the court said:

"It is the duty of the party surprised, immediately upon discovery thereof, to take the proper steps to continue or delay the trial in order to protect his interests. He may not neglect this duty, speculate upon the verdict, possibly in the hope of obtaining a favorable decision in spite of such surprise, and then, failing in this, obtain a new trial on account thereof. McCants v. Thompson, 27 Okla. 706, 115 P. 600; Herring v. Hood, 55 Okla. 737, 155 P. 253; Jones v. Adams, 114 Okla. 138, 244 P. 189. * * *"

See, also, Oklahoma Title Co. v. Burrus, 172 Okla. 94, 44 P. 2d 852.

The defendants next contend, "The court erred in giving to the jury instruction No. 14." Under instruction No. 14, the court told the jury:

"You are instructed, gentlemen of the jury, that if you find your verdict for the plaintiff in this case, the measure of plaintiff's damage will be such a sum of money as will fairly and fully compensate him for the pain, suffering and injuries, if any, suffered or that is reasonably certain to result in the future therefrom, taking into consideration the plaintiff's age, condition of health and strength before and after the same were received, and any and all other facts and circumstances appearing in evidence or relating thereto, not exceeding, however, the sum of $10,000, the amount sued for in his first cause of action."

The defendants say in their brief:

"To this instruction the defendants excepted and exception was allowed. The vice of the instruction lies in the fact that the court told the jury that in measuring the plaintiff's damage the jury may take into consideration the pain, suffering and injuries suffered or that is reasonably certain to result in the future. That is, the court told the jury that they may consider the pain, suffering and injuries which the plaintiff had undergone and the pain, suffering and injuries which the plaintiff may undergo in the future, yet there is not a scintilla of evidence in the record either lay or expert to the effect that the plaintiff would undergo any future pain, suffering of injuries, or that any pain, suffering or injuries would result in the future. The plaintiff in testifying about his own injuries nowhere testified as to any future pain, suffering or injuries, nor was he competent to testify to any future pain, suffering or injuries."

In Shawnee-Tecumseh Traction Co. v. Griggs, 50 Okla. 566, 151 P. 230, it is said:

"There are two rules by which the question of future pain and suffering may be submitted to the jury. If the injury is objective, and it is plainly appar-

ent, from the very nature of the injury, that the injured person must of necessity undergo pain and suffering in the future, then most certainly the plaintiff would not be required to prove a fact so plainly evident, and, upon making proof of such an objective injury, the jury may infer pain and suffering in the future."

The plaintiff testified as follows:

"Q. You said your shoulder was cut, describe that to the jury? A. There was a piece of glass went in right at the point of the shoulder and it cut off around this way. And then it bruised it right here. Q. Have you any difficulty in the use of your shoulder since that time? A. For about a year I couldn't do anything with it. If I pick up anything like that or when I raise it up for anything it hurts in that joint there. Q. Now? A. Yes, sir."

Dr. Allen testified:

"Q. Did you examine his shoulder? A. Yes, sir. Q. What did you find with respect to that? A. He had an injury according to his history, and it showed on his left shoulder, and he complained he could only raise his arm about this high."

There is no showing in this case that the jury based any portion of its award on future pain and suffering.

Section 3206, O. S. 1931, is as follows:

"No judgment shall be set aside or new trial granted by any appellate court of this state in any case, civil or criminal, on the ground of misdirection of the jury or the improper admission or rejection of evidence, or as to error in any matter of pleading or procedure, unless, in the opinion of the court to which application is made, after an examination of the entire record, it appears that the error complained of has probably resulted in a miscarriage of justice, or constitutes a substantial violation of a constitutional or statutory right."

The last assignment of error of defendants is:

"There is error in the amount of recovery allowed in that the verdict and judgment is highly excessive."

It is our belief that the jury was justified in giving this verdict to a man who suffered such pain that he was forced to sit propped up in a chair and could not lie down in bed for 14 days and nights; who was confined to his home for three months; who endured pain in his back for more than two years; who could not raise his arm above a horizontal position for two years, seven months, after the accident: and suffered concussion of the brain and the mental anguish incident to a head injury.

We hold that an award of $2,500 is not excessive, unreasonable, nor unconscionable for the injuries, pain, and suffering plaintiff endured from the time of the accident to the time of the trial of this cause.

The judgment is affirmed.

BAYLESS, C. J., and GIBSON, HURST, and DANNER, JJ., concur.